1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   JULIE WERNER-SIMON (SBN 141630)
4  Assistant United States Attorney
   Senior Litigation Counsel
5  Major Frauds Section
        1100 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-2274
        Facsimile: (213) 894-6269
8       E-mail:   jwerner-simon@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10

11

12                    UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  UNITED STATES OF AMERICA,      )  CR No. 10 -1267
                                   )
15                 Plaintiff,      )  PLEA AGREEMENT FOR
                                   )  DEFENDANT GUADALUPE VALENCIA
16            v.                   )
                                   )
17  GUADALUPE VALENCIA,            )
                                   )
18                 Defendant.      )
                                   )
19  _____)

20

21        1.  This constitutes the plea agreement between GUADALUPE

22  VALENCIA ("defendant") and the United States Attorney's Office

23  for the Central District of California ("the USAO") in the

24  investigation of defendant GUADALUPE VALENCIA and others for mail

25  fraud, wire fraud, and tax offenses related to defendant's

26  investment solicitations.  This agreement is limited to the USAO

27  and cannot bind any other federal, state, local, or foreign

28

10-7-10

1   prosecuting, enforcement, administrative, or regulatory

2   authorities.

3                    DEFENDANT'S OBLIGATIONS

4       2.   Defendant agrees to:

5            a)   Give up the right to indictment by grand jury and,

6   at the earliest opportunity requested by the USAO and provided by

7   the Court, appear and plead guilty to a six-count Information in

8   the form attached to this agreement as Exhibit A or a

9   substantially similar form.

10           b)   Not contest facts agreed to in this agreement.

11           c)   Abide by all agreements regarding sentencing

12  factors contained in this agreement.

13           d)   Appear for all court appearances, surrender as

14  ordered for service of sentence, obey all conditions of any bond,

15  and obey any other ongoing court order in this matter.

16           e)   Not commit any crime; however, offenses that would

17  be excluded for sentencing purposes under United States

18  Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines")

19  § 4A1.2(c) are not within the scope of this agreement.

20           f)   Be truthful at all times with Pretrial Services,

21  the United States Probation Office, and the Court.

22           g)   Pay the applicable special assessments at or

23  before the time of sentencing unless defendant lacks the ability

24  to pay and submits a completed financial statement (form OBD-500)

25  to the USAO prior to sentencing.

26           h)   Cooperate with the Internal Revenue Service in the

27  determination of defendant's tax liability.

28

                              2

1        i)   File amended returns for the years subject to the
2  above admissions, correctly reporting unreported income and
3  correcting improper deductions and credits; and, if requested to
4  do so by the Internal Revenue Service, defendant will provide the
5  Internal Revenue Service with information regarding the years
6  covered by the returns or, in the alternative, sign closing
7  agreements with the Internal Revenue Service at least one month
8  before sentencing, permitting the Internal Revenue Service to
9  assess and collect the amount due, inclusive of the civil fraud
10  penalty for each year and statutory interest as provided by law.

11        j)   Defendant agrees defendant will pay all additional
12  taxes and all penalties and interest assessed by the Internal
13  Revenue Service on the basis of the returns and will promptly pay
14  all additional taxes and all penalties and interest thereafter
15  determined by the Internal Revenue Service to be owing.

16        k)   Agree that she is liable for the fraud penalty
17  imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the
18  understatements of tax liability for 2007 and 2008.

19        l)   Give up any and all objections that could be
20  asserted to the Examination Division of the Internal Revenue
21  Service receiving materials or information obtained during the
22  criminal investigation of this matter, including materials and
23  information obtained through grand jury subpoenas.

24        m)   To provide to the United States Attorney's office,
25  in advance of sentencing, funds, and assets to be applied to
26  defendant's anticipated restitution obligation.   Specifically,
27
28  //

1  defendant will:

2          (1) provide to the United States Attorney's Office

3  copies of documents that evidence her ownership of any right,

4  title, and interest in real property, including deeds, deeds of

5  trust, mortgages, and lease agreements;

6          (2) provide to the United States Attorney's Office

7  copies of documents that evidence her ownership of any right,

8  title, and interest in any promissory notes and any right of

9  defendant to receive payment from any security and secured

10  instrument;

11          (3) provide to the United States Attorney's Office

12  copies of account statements (that is, statements from financial

13  institutions from January 2010 through October 2010) for all

14  checking, savings, and other deposit accounts in which defendant

15  holds right, title, or interest (including partial or co-

16  interest); and

17          (4) provide to the United States Attorney's Office

18  the original of a promissory note in the principal amount of

19  $18,000 payable to defendant's husband, V.P., together with a

20  notarized assignment of the proceeds of the note to the United

21  States executed by defendant's husband.

22          n)    Forfeit all right, title, and interest in all

23  monies, property or assets of any kind, derived from or acquired

24  as a result of, or used to facilitate the commission of,

25  defendant's illegal activities, including all right, title and

26  interest in money and other assets housed in financial

27  institutions in the United States and abroad as well as real

28  estate, jewelry, artwork with a value of more than $500, and

1 automobiles (hereinafter referred to as "the property"), of which
2 defendant has an ownership interest, directly or indirectly,
3 whether in defendant's name or the name of another person or
4 entity holding such property as a nominee for defendant.

5        o)    Defendant is obligated to not transfer, give,
6 spend, sell, or in any way diminish the property listed above in
7 paragraph 2(n), as well as all real property and funds and assets
8 from any source as described in paragraph 2(m), and defendant
9 agrees that this non-dissipation obligation commenced when the
10 initial plea offer was provided to defendant's counsel on
11 September 15, 2010.

12       p)    To take whatever steps are necessary to pass to
13 the United States clear title to the assets listed in above in
14 paragraphs 2(m) and 2(n), including, without limitation, the
15 completing of any other legal documents required for the transfer
16 of title to the United States.

17       q)    Not to assist any other individual or entity in
18 any effort falsely to contest the forfeiture of the assets
19 described above.

20       r)    Not to claim that reasonable cause to seize the
21 assets described above was lacking.

22       s)    That forfeiture of the assets described above
23 shall not be counted toward satisfaction of any special
24 assessment, fine, restitution, or any other penalty the Court may
25 impose.

26       t)    Defendant agrees that the United States may elect,
27 at its sole option, to discontinue any forfeiture proceedings (to
28 the extent that any have been pursued) and apply or deliver any

1  or all of the property or its liquidated value to the clerk of

2  court for payment towards defendant's restitution obligation.

3       3.  Defendant further agrees to cooperate fully with the

4  USAO, the Federal Bureau of Investigation and Internal Revenue

5  Service, and, as directed by the USAO, any other federal, state,

6  local, or foreign prosecuting, enforcement, administrative, or

7  regulatory authority.  This cooperation requires defendant to:

8            a)     Respond truthfully and completely to all

9  questions that may be put to defendant, whether in interviews,

10  before a grand jury, or at any trial or other court proceeding.

11           b)     Attend all meetings, grand jury sessions,

12  trials or other proceedings (including defendant's change of plea

13  hearing and the providing of "Plea Information") at which

14  defendant's presence is requested by the USAO or compelled by

15  subpoena or court order.

16           c)     Produce voluntarily all documents, records,

17  or other tangible evidence relating to matters about which the

18  USAO, or its designee, inquires.

19       4.  For purposes of this agreement: (1) "Cooperation

20  Information" shall mean any statements made, or documents,

21  records, tangible evidence, or other information provided, by

22  defendant pursuant to defendant's cooperation under this

23  agreement and (2) "Plea Information" shall mean any statements

24  made by defendant, under oath, at the guilty plea hearing and the

25  agreed to factual basis statement in this agreement.

26

27  //

28  //

## THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a)   Not contest facts agreed to in this agreement.

b)   Abide by all agreements regarding sentencing factors contained in this agreement.

c)   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d)   Except for other criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further criminally prosecute defendant for criminal violations arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 18 below. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

e)   Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).



1    6.   The USAO further agrees:

2         a)   Not to offer as evidence in its case-in-chief in

3    the above-captioned case or any other criminal prosecution that

4    may be brought against defendant by the USAO, or in connection

5    with any sentencing proceeding in any criminal case that may be

6    brought against defendant by the USAO, any Cooperation

7    Information.  Defendant agrees, however, that the USAO may use

8    both Cooperation Information and Plea Information: (1) to obtain

9    and pursue leads to other evidence, which evidence may be used

10   for any purpose, including any criminal prosecution of defendant;

11   (2) to cross-examine defendant should defendant testify, or to

12   rebut any evidence offered, or argument or representation made,

13   by defendant, defendant's counsel, or a witness called by

14   defendant in any trial, sentencing hearing, or other court

15   proceeding; and (3) in any criminal prosecution of defendant for

16   false statement, obstruction of justice, or perjury.

17        b)   Not to use Cooperation Information against

18   defendant at sentencing for the purpose of determining the

19   applicable guideline range, including the appropriateness of an

20   upward departure, or the sentence to be imposed, and to recommend

21   to the Court that Cooperation Information not be used in

22   determining the applicable guideline range or the sentence to be

23   imposed.  Defendant understands, however, that Cooperation

24   Information will be disclosed to the probation office and the

25   Court, and that the Court may use Cooperation Information for the

26   purposes set forth in U.S.S.G § 1B1.8(b) and for determining the

27   sentence to be imposed.

28

8

c)    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d)    If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2, 3, and 4 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.    Defendant understands the following:

a)    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b)    Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c)    Defendant cannot withdraw defendant's guilty pleas if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or 18 U.S.C. § 3553(e), or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

9

1       d)   At this time the USAO makes no agreement or

2   representation as to whether any cooperation that defendant has

3   provided or intends to provide constitutes or will constitute

4   substantial assistance.   The decision whether defendant has

5   provided substantial assistance will rest solely within the

6   exclusive judgment of the USAO.

7       e)   The USAO's determination whether defendant has

8   provided substantial assistance will not depend in any way on

9   whether the government prevails at any trial or court hearing in

10  which defendant testifies or in which the government otherwise

11  presents information resulting from defendant's cooperation.

12              <u>NATURE OF THE OFFENSES</u>

13     8.   In order for defendant to be guilty of mail fraud in

14  violation of Title 18, United States Code, Section 1341, as

15  alleged in Counts One and Two of the Information, the following

16  must be true:

17      a)   Defendant made or knowingly participated in a

18  scheme or plan for obtaining money or property by making false

19  promises or statements;

20      b)   Defendant knew that the promises or statements

21  were false;

22      c)   The promises or statements were material, that is,

23  they would reasonably influence a person to part with money or

24  property;

25      d)   Defendant acted with the intent to defraud; and

26      e)   Defendant used, or caused to be used, the mails to

27  carry out or attempt to carry out an essential part of the

28  scheme.



9.   In order for defendant to be guilty of wire fraud in violation of Title 18, United States Code, Section 1343, as alleged in Counts Three and Four of the Information, the following must be true:

a)   Defendant made or knowingly participated in a scheme or plan for obtaining money or property by making false promises or statements;

b)   Defendant knew that the promises or statements were false;

c)   The promises or statements were material, that is, they would reasonably influence a person to part with money or property;

d)   Defendant acted with the intent to defraud; and,

e)   Defendant used, or caused to be used, wire transmissions in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

10.   In order for defendant to be guilty of subscribing to false tax returns in violation of 26 U.S.C. § 7206(1) as alleged in Counts Five and Six of the Information, the following must be true:

a)   Defendant must have knowingly made and signed a tax return for the year charged, that contained false information as to a material matter (that is, defendant, received additional income and defendant did not list that additional amount on her tax return);

b)   Defendant must have knowingly made and signed

11

1   the tax return for the year charged which contained a written

2   declaration that the return was being signed subject to the

3   penalties of perjury; and

4              c)   In filing the false tax return for the year

5   charged, defendant must have acted willfully, that is, by

6   voluntarily and intentionally doing something that defendant knew

7   was against the law.

8        11.   Defendant admits that defendant is, in fact, guilty of

9   these offenses as described in Counts One through Six of the

10  Information.

11                    <u>PENALTIES AND RESTITUTION</u>

12       12.   Defendant understands that the statutory maximum

13  sentence that the Court can impose for each violation of Title

14  18, United States Code, Section 1341, mail fraud, as charged in

15  Counts One and Two of the Information is: 20 years imprisonment;

16  a 3-year period of supervised release; a fine of $250,000 or

17  twice the gross gain or gross loss resulting from the offense,

18  whichever is greatest; and a mandatory special assessment of

19  $100.   The statutory maximum sentence that the Court can impose

20  for each violation of Title 18 United States Code § 1343, wire

21  fraud, as charged in Counts Three and Four of the Information, is

22  20 years incarceration, a three-year period of supervised

23  release, a fine of $250,000, or twice the gross gain or gross

24  loss resulting from the offense, whichever is greatest, and a

25  mandatory special assessment of $100.   The statutory maximum

26  sentence that the Court can impose for each violation of Title

27  26, United States Code, Section 7206(1), subscription to a false

28  tax return, as charged in Counts Five and Six of the Information

                              12

1    is: 3 years incarceration; a one-year period of supervised
2    release; a fine of $250,000; and a mandatory special assessment
3    of $100.  Defendant understands that the Court: (a) may order
4    defendant to pay any additional taxes, interest, and penalties
5    that defendant owes to the United States; and (b) must order
6    defendant to pay the costs of prosecution, which may be in
7    addition to the statutory maximum fine stated above.

8        13.  Defendant understands, therefore, that the total
9    maximum sentence for all offenses to which defendant is pleading
10   guilty is: 86 years incarceration; a three-year period of
11   supervised release; a fine of $1.5 million plus twice the gross
12   gain or loss resulting from the fraud offenses, whichever is
13   greatest, and a mandatory special assessment of $600, as well as
14   the costs of prosecution for Counts Five and Six.

15       14.  Defendant understands that supervised release is a
16   period of time following imprisonment during which defendant will
17   be subject to various restrictions and requirements.  Defendant
18   understands that if defendant violates one or more of the
19   conditions of any supervised release imposed, defendant may be
20   returned to prison for all or part of the term of supervised
21   release authorized by statute for the offense that resulted in
22   the term of supervised release, which could result in defendant
23   serving a total term of imprisonment greater than the statutory
24   maximum stated above.

25       15.  Defendant agrees to make full restitution for the
26   losses caused by defendant's activities.  Defendant agrees that,
27   in return for the USAO's compliance with its obligations under
28   this agreement, the amount of restitution is not restricted to

the amount alleged in the counts to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $6.9 million but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.  Defendant agrees to make partial restitution at or before the time of sentencing, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

16.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that once the court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

17.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which

14

1   may, under some circumstances, be mandatory.  The court cannot,

2   and defendant's attorney also may not be able to, advise

3   defendant fully regarding the immigration consequences of the

4   felony conviction in this case.  Defendant understands that by

5   entering a guilty pleas defendant waives any claim that

6   unexpected immigration consequences may render defendant's guilty

7   pleas invalid.

8                            FACTUAL BASIS

9       18.  Defendant and the USAO agree to the statement of facts

10  provided below.  Defendant and the USAO agree that this statement

11  of facts is sufficient to support pleas of guilty to the charges

12  described in this agreement and to establish the Sentencing

13  Guidelines factors set forth in paragraph 20 below but is not

14  meant to be a complete recitation of all facts relevant to the

15  underlying criminal conduct or all facts known to either party

16  that relate to that conduct.

17            a)   Defendant VALENCIA was first licensed as realtor

18  by the California Department of Real Estate in June 1990, and

19  except for periods of suspension, maintained her California real

20  estate license until September 2007, when her license expired.

21            b)   Beginning in or about 2001 and continuing through

22  in or about 2009, defendant, individually, and/or through the

23  entities, the "Real Estate & Loan Consultants" and "R.E. Equity

24  Group, Inc.," (hereinafter collectively as "RE&LC"), and with

25  others, known and unknown to the United States Attorney,

26  solicited investments from the public.  Defendant represented to

27  investors that the RE&LC successfully sold promissory note

28

1   investments, trust deeds, partnerships for the purchase and
2   development of real estate and other investments.
3        c)   From a Downey, California office building, in Los
4   Angeles County, within the Central District of California,
5   defendant promoted two types of investments: (1) investment pools
6   purporting to fund loans to secure the purchase of real estate
7   and (2) investment pools purporting to fund short-term loans to
8   businesses (also referred to as SuperCorp or ELOC programs).
9   With both purported investment vehicles, defendant promised high
10  rates of interest (8%-20%), quick returns (from 45 days to one
11  year), fully secured collateral for investors' funds (backed by
12  deeds of trust on valuable real estate) as well as money back
13  guarantees through the use of company promissory notes in the
14  name of RE&LC.
15       d)   Unknown to the investors, there was no profit, as
16  defendant used newer investor funds to pay original investors.
17  The investors did not know that the funds they provided defendant
18  were not fully collateralized in that defendant made false deeds
19  of trust for property that did not exist, or on real property but
20  with forged signatures.  Some of the time, defendant used
21  property descriptions from real estate transactions she had
22  handled earlier in her career as a realtor on the bogus deeds of
23  trust she created.  The investors did not know that defendant did
24  not record the deeds.  Unknown to the investors, defendant
25  provided them with bogus company promissory notes, which
26  defendant had created and which had no value.  Defendant also
27  used forged notary stamps and falsely represented that she was
28  currently a licensed real estate agent.

16

1          e)    In addition to acting with the intent to defraud

2    and deceive the investors, and making material misrepresentations

3    of fact and concealing material facts to investors, defendant

4    used or caused both the mails and interstate wire transmissions

5    to be used to carry out or attempt to carry out an essential part

6    of the scheme.   Specifically as to mailings, defendant sent

7    investment promotional material as well as fictitious deeds of

8    trust and promissory notes to investors using the U.S. mails or

9    commercial carriers, and investors used the mails to send checks

10   or correspondence to defendant.   Defendant also used wire

11   transmissions through her use of email, Internet, and the RE&LC

12   website host from Downey, California and elsewhere within the

13   Central District of California, to communicate with investors

14   outside the state of California.   Defendant directed those

15   investors to wire funds to defendant from across state lines from

16   bank accounts outside California into defendant's bank accounts

17   in the Central District of California.

18          f)    Defendant induced over 150 investors to provide

19   her with approximately $6.9 million dollars which defendant

20   misappropriated.   These victim-investors included those

21   identified in Counts One through Four of the Information as

22   described below.

23                        Mail Fraud Counts

24          g)    On or about June 16, 2008, in furtherance of the

25   scheme to defraud, defendant knowingly caused Eva J., age 77, to

26   mail a $50,000 check, from Roslyn Heights, New York, to

27   defendant's RE&LC office in Downey, California, as charged in

28   Count One of the Information.

                                17

1       h)    On or about February 20, 2009, in furtherance of

2  the scheme to defraud, defendant sent via certified U.S. mail, a

3  package containing a bogus deed of trust and a worthless

4  promissory note to Barbara G., age 60, in Mill Valley,

5  California, as charged in Count Two of the Information.

6                      Wire Fraud Counts

7       i)    On or about June 10, 2008, in furtherance of the

8  scheme to defraud, defendant knowingly caused Felicia G., age 49,

9  to wire $100,000 from Livingston, New Jersey, to defendant's bank

10  account at US Bank in the Central District of California, as

11  charged in Count Three of the Information.

12       j)    On or about February 2, 2009, in furtherance of

13  the scheme to defraud, defendant knowingly caused Phillip P., age

14  44 from Texas, on behalf of Phillip P.'s elderly mother, age 80,

15  to wire $37,500 to defendant's bank account in the Central

16  District of California, as charged in Count Four of the

17  Information.

18                      Tax Offenses

19       k)    On or about October 15, 2008, in Los Angeles

20  County, within the Central District of California, and elsewhere,

21  defendant willfully signed a U.S. Individual Income Tax Return on

22  Form 1040 for the calendar year 2007, filed with the Internal

23  Revenue Service, containing a written declaration that it was

24  made under the penalties of perjury, in which defendant reported

25  a total annual income of $117,815, when in truth and in fact,

26  defendant knew that her total annual income was well in excess of

27  $400,000, as charged in Count Five of the Information.

28

1          1)    On or about May 15, 2009, in Los Angeles County,

2    within the Central District of California, and elsewhere,

3    defendant willfully signed a U.S. Individual Income Tax Return on

4    Form 1040 for the calendar year 2008, filed with the Internal

5    Revenue Service, containing a written declaration that it was

6    made under the penalties of perjury, in which defendant reported

7    a total annual income of a loss of $270,200, when in truth and in

8    fact, defendant knew that her total annual income was well in

9    excess of $200,000, as charged in Count Six of the Information.

10                          SENTENCING FACTORS

11         19.  Defendant understands that in determining defendant's

12   sentence the Court is required to consider the factors set forth

13   in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence

14   and sentencing range established under the Sentencing Guidelines.

15   Defendant understands that the Sentencing Guidelines are advisory

16   only, that defendant cannot have any expectation of receiving a

17   sentence within the Sentencing Guidelines range, and that after

18   considering the Sentencing Guidelines and the other § 3553(a)

19   factors, the Court will be free to exercise its discretion to

20   impose any sentence it finds appropriate up to the maximum set by

21   statute for the crimes of conviction.

22   //

23

24   //

25

26   //

27

28   //

20.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. § 2B1.1(a)(2) |
| Specific Offense Characteristics (loss amount more than 2.5 less than 7 million) | : | +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| Specific Offense Characteristics (number of victims 50 or more but less than 250) | : | +4 | [U.S.S.G. § 2B1.1(2)(C)] |
| Adjustment for Vulnerable Victims | : | +2 | [U.S.S.G. § 3A1.1(b)(1)] |
| Roll in the offense (Organizer or Leader) | | +2 | [U.S.S.G. § 3B1.1(c) |
| Tax Base Offenses (Tax loss of more than $200,000 but less than $400,000) | : | +18 | [U.S.S.G. § 2T1.1: 2T4.1(G)] |
| Specific Tax Offense Characteristics | : | +2 | [U.S.S.G. § 2T1.1(b)] |
| Grouping (Fraud/Tax group) | : | - | [U.S.S.G. § 3D1.3] |
| Adjustments: Acceptance of Responsibility: | | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | | 29 | |

21.   Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

22.   The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an

//

1  additional one-level downward adjustment under U.S.S.G. §

2  3E1.1(b)) only if the conditions set forth in paragraph 2) are

3  met.

4      23.  Defendant understands that there is no agreement as to

5  defendant's criminal history or criminal history category.

6  However, if defendant's criminal history is deemed to be a

7  criminal history category one by the court, a total offense level

8  of 29 as a criminal history one equates to an advisory guideline

9  range of 87 to 108 months.

10              WAIVER OF CONSTITUTIONAL RIGHTS

11     24.  Defendant understands that by pleading guilty,

12  defendant gives up the following rights:

13          a)   The right to persist in a pleas of not guilty.

14          b)   The right to a speedy and public trial by jury.

15          c)   The right to the assistance of an attorney at

16  trial, including the right to have the Court appoint an attorney

17  to represent defendant at trial.  Defendant understands, however,

18  that, despite defendant's guilty pleas, defendant retains the

19  right to be represented by an attorney -- and, if necessary, to

20  have the Court appoint an attorney if defendant cannot afford one

21  at every other stage of the proceeding.

22          d)   The right to be presumed innocent and to have the

23  burden of proof placed on the government to prove defendant

24  guilty beyond a reasonable doubt.

25          e)   The right to confront and cross-examine witnesses

26  against defendant.

27

28

                              21

1    f)   The right to testify on defendant's own behalf and

2  present evidence in opposition to the charges, including calling

3  witnesses and subpoenaing those witnesses to testify.

4    g)   The right not to be compelled to testify, and, if

5  defendant chose not to testify or present evidence, to have that

6  choice not be used against defendant.

7    h)   Any and all rights to pursue any affirmative

8  defenses, Fourth Amendment or Fifth Amendment claims, and other

9  pretrial motions that have been filed or could be filed.

10                    WAIVER OF APPEAL OF CONVICTIONS

11    25.  Defendant understands that, with the exception of an

12  appeal based on a claim that defendant's guilty pleas were

13  involuntary, by pleading guilty defendant is waiving and giving

14  up any right to appeal defendant's convictions on the offenses to

15  which defendant is pleading guilty.

16              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17    26.  Defendant agrees that, should the court impose a term

18  of imprisonment within or below the range corresponding to an

19  offense level of 29 and the criminal history category calculated

20  by the Court, defendant gives up the right to appeal all of the

21  following: (a) the procedures and calculations used to determine

22  and impose any portion of the sentence; (b) the term of

23  imprisonment imposed by the Court; (c) the fine imposed by the

24  court, provided it is within the statutory maximum (d) the amount

25  and terms of any restitution order to the extent it is over $6.9

26  million dollars (e) the term of probation or supervised release

27  imposed by the Court, provided it is within the statutory

28  maximum; and (f) any of the following conditions of probation or

1  supervised release imposed by the Court: the standard conditions

2  set forth in General Orders 318, 01-05, and/or 05-02 of this

3  Court; the drug testing conditions mandated by 18 U.S.C. §§

4  3563(a)(5) and 3583(d); and the alcohol and drug use conditions

5  authorized by 18 U.S.C. § 3563(b)(7).

6      27.  The USAO agrees that, provided (a) all portions of the

7  sentence are at or below the statutory maximum specified above;

8  (b) the Court calculates the offense level to be used for

9  selecting a sentencing range under the Sentencing Guidelines to

10 corresponding to a total offense level of 29 or above prior to

11 any departure under U.S.S.G. § 5K1.1; and (c) the Court imposes a

12 term of imprisonment within or above the range corresponding to

13 the offense level calculated after any downward departure under

14 U.S.S.G. § 5K1.1 and the criminal history category calculated by

15 the Court, the USAO gives up its right to appeal any portion of

16 the sentence, with the exception that the USAO reserves the right

17 to appeal the amount of restitution ordered if that amount is

18 less than $6.9 million.

19          RESULT OF WITHDRAWAL OF GUILTY PLEAS

20     28.  Defendant agrees that if, after entering guilty pleas

21 pursuant to this agreement, defendant seeks to withdraw and

22 succeeds in withdrawing defendant's guilty pleas on any basis

23 other than a claim and finding that entry into this pleas

24 agreement was involuntary, then (a) the USAO will be relieved of

25 all of its obligations under this agreement, including in

26 particular its obligations regarding the use of Cooperation

27 Information; (b) in any investigation, criminal prosecution, or

28 civil, administrative, or regulatory action, defendant agrees

that any Cooperation Information and any evidence derived from
any Cooperation Information shall be admissible against
defendant, and defendant will not assert, and hereby waives and
gives up, any claim under the United States Constitution, any
statute, or any federal rule, that any Cooperation Information or
any evidence derived from any Cooperation Information should be
suppressed or is inadmissible; and (c) should the USAO choose to
pursue any charge or any civil, administrative, or regulatory
action that was either dismissed or not filed as a result of this
agreement, then (i) any applicable statute of limitations will be
tolled between the date of defendant's signing of this agreement
and the filing commencing any such action; and (ii) defendant
waives and gives up all defenses based on the statute of
limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing
this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

29.  This agreement is contingent upon Tax Division
approval.  The agreement is effective upon signature and
execution of all three required certifications by defendant,
defendant's counsel, and an Assistant United States Attorney.
The signature of the Assistant United States Attorney on this
agreement will signify the approval of the Tax Division.  The
offer contained in this plea agreement, contingent on Tax
Division approval, is withdrawn if not executed by the defendant
an defense counsel by close of business Wednesday, October 13,
2010.

<u>BREACH OF AGREEMENT</u>

30.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), or engages in other criminal activity, the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

        a)   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

        b)   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime,

25

GN.

1  including charges that the USAO would otherwise have been

2  obligated to dismiss or not to criminally prosecute pursuant to

3  this agreement; and (iii) will no longer be bound by any

4  agreement regarding the use of Cooperation Information and will

5  be free to use any Cooperation Information in any way in any

6  investigation, criminal prosecution, or civil, administrative, or

7  regulatory action.

8      c)   The USAO will be free to criminally prosecute

9  defendant for false statement, obstruction of justice, and

10  perjury based on any knowingly false or misleading statement by

11  defendant.

12      d)   In any investigation, criminal prosecution, or

13  civil, administrative, or regulatory action: (i) defendant will

14  not assert, and hereby waives and gives up, any claim that any

15  Cooperation Information was obtained in violation of the Fifth

16  Amendment privilege against compelled self-incrimination; and

17  (ii) defendant agrees that any Cooperation Information and any

18  Pleas Information, as well as any evidence derived from any

19  Cooperation Information or any Pleas Information, shall be

20  admissible against defendant, and defendant will not assert, and

21  hereby waives and gives up, any claim under the United States

22  Constitution, any statute, Rule 410 of the Federal Rules of

23  Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,

24  or any other federal rule, that any Cooperation Information, any

25  Pleas Information, or any evidence derived from any Cooperation

26  Information or any Pleas Information should be suppressed or is

27  inadmissible.

28  //

1          COURT AND PROBATION OFFICE NOT PARTIES

2     31.   Defendant understands that the Court and the United

3 States Probation Office are not parties to this agreement and

4 need not accept any of the USAO's sentencing recommendations or

5 the parties' agreements to facts or sentencing factors.

6     32.   Defendant understands that both defendant and the USAO

7 are free to: (a) supplement the facts by supplying relevant

8 information to the United States Probation Office and the Court,

9 (b) correct any and all factual misstatements relating to the

10 Court's Sentencing Guidelines calculations, and (c) argue on

11 appeal and collateral review that the Court's Sentencing

12 Guidelines calculations are not error, although each party agrees

13 to maintain its view that the calculations in paragraph 20 are

14 consistent with the facts of this case.  While this paragraph

15 permits both the USAO and defendant to submit full and complete

16 factual information to the United States Probation Office and the

17 Court, even if that factual information may be viewed as

18 inconsistent with the facts agreed to in this agreement, this

19 paragraph does not affect defendant's and the USAO's obligations

20 not to contest the facts agreed to in this agreement.

21     33.   Defendant understands that even if the Court ignores

22 any sentencing recommendation, finds facts or reaches conclusions

23 different from those agreed to, and/or imposes any sentence up to

24 the maximum established by statute, defendant cannot, for that

25 reason, withdraw defendant's guilty pleas, and defendant will

26 remain bound to fulfill all defendant's obligations under this

27 agreement.  Defendant understands that no one -- not the

28 prosecutor, defendant's attorney, or the Court -- can make a

1  binding prediction or promise regarding the sentence defendant

2  will receive, except that it will be within the statutory

3  maximum.

4             NO ADDITIONAL AGREEMENTS

5       34.   Defendant understands that, except as set forth

6  herein, there are no promises, understandings, or agreements

7  between the USAO and defendant or defendant's attorney, and that

8  no additional promise, understanding, or agreement may be entered

9  into unless in a writing signed by all parties or on the record

10  in court.

11       PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

12       35.   The parties agree that this agreement will be

13  considered part of the record of defendant's guilty pleas hearing

14  as if the entire agreement had been read into the record of the

15  proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

18  ANDRÉ BIROTTE JR.

19  United States Attorney

20

21  JULIE WERNER-SIMON                    12/9/10
    Assistant United States Attorney      Date

22

23                                        10|9|10

24  GUADALUPE VALENCIA                     Date
    Defendant

25                                        10|9|10

26  KATE CORRIGAN, ESQ.                    Date
    Counsel for Defendant

27  GUADALUPE VALENCIA

28  10-7-10

28